### CIVIL COMPLAINT FORM TO BE USED BY A *PRO SE* PRISONER

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Gregory A. Fann Jr. JL-5698

**Full Name of Plaintiff        Inmate Number**

v.

Superintendent Bobby-Jo Salamon

**Name of Defendant 1**

Former D.O.C. Secretary George Little

**Name of Defendant 2**

Captain D.R. Davis

**Name of Defendant 3**

Major Torres

**Name of Defendant 4**

D.O.C. Secretary Laurel Harry

**Name of Defendant 5**

(Print the names of all defendants. If the names of all
defendants do not fit in this space, you may attach
additional pages. Do not include addresses in this
section).

Civil No. _____

(to be filled in by the Clerk's Office)

(✓) Demand for Jury Trial

(  ) No Jury Trial Demand

# FILED
HARRISBURG, PA

OCT 27 2023

PER _____
DEPUTY CLERK

## I.    NATURE OF COMPLAINT

Indicate below the federal legal basis for your claim, if known.

✓     Civil Rights Action under 42 U.S.C. § 1983 (state, county, or municipal defendants)

___   Civil Rights Action under <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388
      (1971) (federal defendants)

___   Negligence Action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, against the
      United States

Attachment


Defendant No. 6
James Barnacle
Director of BII, Pennsylvania Department of
Corrections

## Title 42 U.S.C. § 1983 Complaint

## Introduction

1. This is a § 1983 action filed by Gregory D. Fann Jr. against people working under color of state law in the Pennsylvania Department of Corrections for violating the United States Constitutions Amendments 1st, 8th, 14th, as well as the destruction of his personal property, Mental and Emotional damage and Respondent Superior. Plaintiff who's held under the care, custody, and control of the Defendants has been placed in punitive confinement in retaliation of his use of the Inmate Grievance System, when immediately following the use of protective conduct (the right to petition), and for informing the Bureau of Investigations and Intelligence (BII) of S.C.I. Rockview's officer staff conduct. Whereas he was placed in the Security Threat Group Management Unit (STGMU) after being charged by S.C.I. Rockview's Captain D.R. Davis of a false misconduct involving him in an unauthorized inmate protest.

2. The Plaintiff was transferred back to S.C.I. Fayette an placed on a DC-ADM 802 1-B-1-A, two days after informing B.I.I. agent "Mr. Almi" of the lewd conduct of staff at S.C.I. Rockview. Mr. Fann was given a misconduct hearing and found guilty of charges by hearing examiner Ms. B. Rudzienski

he was sanctioned to 120 days D.C. time and processed by S.C.I's Rockview and Fayette to be placed in the STGMU. Mr. Fann also alleges that Defendants are implementing these procedures out of retaliation and unconstitutionally through policy 6.5.1. section 4 that grants unfettered authority to punish without Due Process base of discrimination of him and favoritism of facility staff. The Plaintiff seeks declaratory relief and punitive damages.

3. This court has jurisdiction over the Plaintiff's claims of violation of federal constitutional rights under 28 U.S.C. §§ 1331(a) and 1343

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b), because the events given rise to this complaint occurred in the Middle and Western Districts of Pennsylvania i.e. Bellefonte and Fayette counties.

## II.   ADDRESSES AND INFORMATION

### A.   PLAINTIFF

Fann, Gregory D.

Name (Last, First, MI)

JL-5698

Inmate Number

S.C.I. Fayette

Place of Confinement

50 Overlook Drive

Address

LaBelle, Pa. 15450-1350

City, County, State, Zip Code

Indicate whether you are a prisoner or other confined person as follows:

____   Pretrial detainee

____   Civilly committed detainee

____   Immigration detainee

✓   Convicted and sentenced state prisoner

____   Convicted and sentenced federal prisoner

### B.   DEFENDANT(S)

Provide the information below for each defendant. Attach additional pages if needed.

Make sure that the defendant(s) listed below are identical to those contained in the caption.   If incorrect information is provided, it could result in the delay or prevention of service of the complaint.

Defendant 1:

Salaman, Bobby-Jo  ( Individual Capacity) +( Official Capacity)

Name (Last, First)

Superintendent of S.C.I Rockview

Current Job Title

1  Rockview Place

Current Work Address

Bellefonte, Pa., 16823-1664

City, County, State, Zip Code

**Defendant 2:**

Little, George ( Individual capacity ) + ( Offical Capacity )

Name (Last, First)

Former D.O.C. Secretary

Current Job Title

1420 Technology Parkway

Current Work Address

Mechanicsburg, Pa. 17050

City, County, State, Zip Code

**Defendant 3:**

Davis, D.R. ( Don't have first name ) ( Individual capacity ) + ( Offical capacity )

Name (Last, First)

Captain at S.C.I. Rockview

Current Job Title

1 Rockview Place

Current Work Address

Bellefonte, Pa. 16823-1664

City, County, State, Zip Code

**Defendant 4:**

Torres, ( Don't have first name ) ( Individual capacity ) + ( Offical capacity )

Name (Last, First)

Major of D.O.C's Bureau of Investigations and Intelligence

Current Job Title

1920 Technology Parkway

Current Work Address

Mechanicsburg, Pa. 17050

City, County, State, Zip Code

**Defendant 5:**

Harry, Laurel ( Individual + Offical capacity )

Name (Last, First)

D.O.C. Secretary

Current Job Title

1920 Technology Parkway

Current Work Address

Mechanicsburg, Pa. 17050

City, County, State, Zip Code

B. Defendant(s)

Defendant 6:
Barnacle, James     ( Individual & Official capacity)
Director of DoC's Bureau of Investigations and Intelligence
1920 Technology Parkway
Mechanicsburg, Pa. 17050

## III.   STATEMENT OF FACTS

State only the facts of your claim below.  Include all the facts you consider important.  Attach additional pages if needed.

A.   Describe where and when the events giving rise to your claim(s) arose.

See Attached

B.   On what date did the events giving rise to your claim(s) occur?

See Attached

C.   What are the facts underlying your claim(s)? (For example:  What happened to you? Who did what?)

See Attached

Statement of Facts

1.      On 4/25/22 at S.C.I. Rockview approx. between 3:30 pm and 4:00 pm, the inmates on A-block decided to protest a decision the facility made to take away the night blockout. So, the facility went into lockdown. During that time the Plaintiff was housed on D-block in 123 cell, and wasn't aware the jail was on lockdown till he realized blockout nor yard was called. Plaintiff only assumed it was the guards just calling blockout late again. When no inmates came out Plaintiff then knew the institution was locked down.

2.      On 4/26/22 the institution was still on lockdown, by then inmates had already heard about A-block's protest. Later on that day, there was some people from Central Office who came onto D-block and spoke to some of the inmates. They asked a few questions about the protest, Plaintiff spoke to a woman he remembered from S.C.I. Coal Township. She asked Plaintiff how he liked it at S.C.I. Rockview, he told her about a grievance he had recently filed that had been denied citing "Too many issues". Plaintiff told her it was based on the hazardous conditions of the blocks, the birds and their droppings all over the block, and of the staff misconduct. They left and later that night inmates signed up for phones and Kiosk,

and remained on lockdown.

3       On 4/27/22 inmates were still on lockdown, around 9am or 10am the guards started taking certain inmates to the Education building. The guards came to Plaintiff cell and said that they wanted him to come with them (Plaintiff doesn't know their names). When Plaintiff came out he was hand cuffed and taken to the Education Building. On his way in the security Captain and his team were present, Plaintiff asked Captain Wooster "What's up". When the security team took the handcuffs off, Captain Wooster told him that he wanted him to talk to someone.

4       Plaintiff was directed to one of the classrooms, where he met "Mr. Alma" who claimed to be from the Parole Dept. at Central Office. Mr. Alma asked Plaintiff what he knew about the protest, Plaintiff stated "Nothing really." Plaintiff told him he heard a few guys talking about not coming in from yard. But he'd believe it when he hears about it, but he didn't care. Mr. Alma wanted to know why the guys were upset. Plaintiff told him the night blackout was being taken, which would basicly force people to either go outside or remain locked in from 3:30pm to the next day. And those who'd suffer the most would be the elderly and handicap, who don't go outside. Mr. Alma said "I could see what you mean by that." He then asked the Plaintiff how he felt about the facility. Plaintiff told him about the grievance he filed on the hazardous conditions they were

living in, the birds and their droppings everywhere, and the misconduct of the guards. Mr. Alma said "Like what?", Plaintiff informed him of how guards on D-block like to have sex in the D-block hub, bathroom, or counselor's office, Plaintiff stated "orgies or run-a-train on some female guards" (Run-a-train- means guy after guy with one woman) after night count before 3rd shift comes in. And the 2nd shift Sgt. (Sgt. Tischler) doesn't like to stay in there or be around it, so after count he walks around and if they're not in the counselor or unit Manager's, he sit back there till he leaves.

5      Mr. Alma wanted to know if the Plaintiff could name anyone specific, so Plaintiff told him about how during "2021" when inmates were recieving their stimulus. While in the D-block yard two Co's (Plaintiff doesn't know their names) tried to solicite himself and inmate Heath into purchasing nude pictures of/or paying to have sex with (former C.O.) Al miller. Plaintiff informed Mr. Alma of how 2nd shift C.O.'s on D-block like to talk about what they do with female rookies and other C.O.'s. One of which is Co. Ms. Miller, whom Plaintiff heard them as "The Booty bird" or "Shitty butt".

6      Plaintiff told Mr. Alma how because Ms. Miller and him conversated from time to time, he informed her of what he had heard, been told, and seen. Ms. Miller asked if the Plaintiff could tell her who, Plaintiff told her "No, I.

he wasn't trying to have anyone target him for telling her, 2. He's not all that sure of their names, and 3. because he didn't like talking to her everytime, while holding on to that information. Plus, she seemed like an o.k. person at the time. Plaintiff told her "What you do is your own business and not something he should be hearing from her co-workers.

7       Plaintiff then told Mr. Almo how he later learned of C.O. Ms. Miller giving out "sexual favors for favors", Plaintiff actually heard it as "favors for favors", but the guard who told him was clear what he meant. Plaintiff also told Mr. Almo how one day he asked C.O. Hubble "What's a party girl?", she responded back "A girl who likes to party. Why do you ask that?" Plaintiff told her "I heard someone say that about one of the female C.O.'s." C.O. Hubble said "Was it me?", Plaintiff said "No." She then said "Oh, you talking about A.miller."

8       Plaintiff told Mr. Almo how he later learned of how C.O. Ms. Miller slapped a friend of his on CA-block, a kid who goes by the name "Jon-Jon". But because of these "favors", the issue was ignored. Plaintiff had seen them (guards on D-block) send a rookie out to work the compound where C.O. Ms. Miller was supposed to be stationed at so she can come on the block. And on a different night she grabbed me by the wrist (both incidents were in front of Lt. Rook another on the recieving end of these "favors").

9        Co. Ms. Miller even went as far as to threaten the
         Plaintiff in these exact words "You don't know
         what I could do to you." While he walked through
         the gate pass her on his way to Pill-line.

10          Mr. Almo asked Plaintiff "These orgies or sex
         in the hub, have you seen this?", Plaintiff told him
         not as much as others, cause most of the guys like to
         watch. That's how inmates knew it was different women,
         but whenever Co. Ms. Miller came on the block after
         count, the guys would yell "Zero dark 30". And if they
         weren't in the hub or bathroom they'd go in the counselor's
         or Unit Manager's office and lock the hall door. Plaintiff
         mention how he got a laugh watching guys try to go
         in but the door would be locked.

11          Mr. Almo laughed at that, then said "Besides the
         orgies, trains, and everything. You got anything else?"
         Plaintiff told him how an inmate died on A-block just
         recently, but if the guards were doing their jobs and
         not having sex in the bathroom, they may have stopped
         it. Plaintiff informed Mr. Almo he got that info from
         a staff member and did not wish to reveal the person's
         identy. Plaintiff told Mr. Almo "he would never have mentioned
         any of that, but once the staff allowed Co. Ms. Miller to
         get away with so much, on top of the inmates getting sick
         from the work on D-block, He decided to file a grievance."
         After having the facility deny his grievance, the Plaintiff felt,

he could trust Central Office.

12        Afterward, Plaintiff left and on his out he seen inmate Hightower (D-block/cell 125) waiting to go talk to Mr. Alms. When Plaintiff got outside of the Education building the Co's handcuffed him again, and escorted him back to D-block. Once back on the block Plaintiff was uncuffed and went back to his cell. That evening inmates were allowed to get in the showers. There were at least a number of 5 guards running showers (2 of those 5 were C.O.s Mr. Ostrolski and Mr. Miller).

13        While waiting for showers, Plaintiff stood at his door and talked to C.O. Mr. Ostrolski, who told him it was a "Peaceful Protest". The guys just sat in the dayroom quiet till someone came to speak to them. (His exact description) After showers inmates were allowed out for phones and Kiosk, Plaintiff plugged up his tablet and called his girlfriend Valeen Senon, whom he had a contact visit set for 5/1/22.

14        On 4/28/22 Plaintiff was he had to go speak to someone again, it was still morning. Plaintiff came out and was handcuffed again. The "White shirt" says "Don't worry if we have to pack your stuff, we'll have your celly do it.". Plaintiff was taken to In-take, he asked the guard was he being transfered. The In-take C.O. said that the Plaintiff had to talk to Captain Wooster, but Captain Wooster never came to talk to Plaintiff.

15    Two hours later, H.R.T. (High Risk Transfer) showed up and Plaintiff was taken back to S.C.I Fayette. Fayette's P.R.C. (Program Review Committee) team claimed not to Know why he was back. Plaintiff was placed on A.C. status DC-ADM 802-1-B-1-F and housed on J-block/ A-pod. Plaintiff was told he'd see P.R.C. on 5/4/22, he wasn't given a phone call, his property, or a shower till 5/12/22. Plaintiff wrote to the D.O.C's Central Offices on 4/29/22, trying to Know what was happening.

16    On 5/4/22 Plaintiff seen P.R.C who still claimed not to Know what was going on. Plaintiff remained on A.C. status and P.R.C. changed his 802 to DC-ADM 802-1-B-1-A, because of an incident from 2018 when he was last at S.C.I Fayette. Plaintiff was moved to L-block/c-pod 3 cell.

17    On 5/5/22 at approx: 10:05am I got a misconduct from S.C.I Rockview, incident date 4/26/22 and report date 5/4/22, signed by Capt. D.R Davis stating that Plaintiff was identified by Department of Corrections B.I.I as an individual in a plot to take Administrative members hostage during an unauthorized inmate protest. I was moved from L-block/c-pod back to J-block/ c-pod and placed in 8 cell.

18    The cell had recently been prepper sprayed that week and cleaned, Plaintiff found out from another inmate he Knew as "Top Cat". When he was heard choking and

Coughing in the cell. There was pepper spray and vomit all over the cell, also metal shards from the rusty broken floor drain everywhere. (I mailed home a big enough piece as proof.)

19    On 5/6/22 approx. 7:30am The officer gave me back my DC-141 part 2A (Inmate request for witnesses and representation), I requested to have 1st shift C.O. Stills (S.C.I. Rockview), 2nd shift C.O. Metz (S.C.I. Rockview), and Mr. Almo (BII agent / Parole Dept. worker) as my witnesses. Plaintiff also named a number of inmates, C.O.'s, Sgt's and his Masonry teacher Mr. Letterman in his inmate version as more witnesses. By the time Plaintiff was housed on J-block/c-pod, his property had been searched a number of 4 times and he still never got to even see it, or sign for it. Plaintiff had been subjected to washing his body with a piece of sheet rip from his linens.

20    By 5/9/22 Plaintiff managed to clean as much of the pepper spray as he could and even cleaned the dry vomit. Plaintiff asked for disinfect, but never got any.

21    On 5/10/22 Plaintiff had his misconduct hearing around approx. 10:30am, the HEX (Hearing Examiner) Ms. Rudziewski told the Plaintiff that she had nothing, S.C.I. Rockview hadn't sent her any type of

reports, video footage, or statements. Plaintiff explained to her how he was in the gym from approx. 8-9am and Masonry class from 1pm-3:30pm on 4/25/22, also he was housed on D-block not A-block, and no one on D-block protected.

22    Plaintiff explained that he had witnesses, security footage, phone and Kiosk records, along with gym and class attendance to prove his whereabouts/movements on 4/25/22 and everyday before and after to prove his innocence. Ms. Rudzienski said she wanted to get a hold of his witnesses, but due to them working different shifts it'd be hard. "She" decided it would be best to postpone the hearing and told Plaintiff to sign the waiver.

22    Ms. Rudzienski never tried to contact the Plaintiff's witnesses, In fact on 5/13/22 she had an in-camera reliability hearing with Major Torres of Department of Correction's BII to determine the reliability of the C.I.'s/CHS. She never spoke to any C.I./CHS only Major Torres. No C.I.'s were ever questioned by Ms. Rudzienski, nor was the Plaintiff given a chance to question Major Torres as per DC-ADM 801, section 3 Misconduct Hearings, subsection D. Witnesses (2.). Information was withheld that Major Torres could have provided without revealing the C.I./CHS's identity (like time of day/place this plan was put together).

24    On 5/18/22, Plaintiff had his misconduct hearing resumed and Mr. Rubienski found the Plaintiff guilty of the possibility that he would have taken part in the protest and sanctioned him to 120 days D.C. Time. Mr. Rubienski claimed that there was a preponderance of evidence to prove guilt. (Even though Plaintiff was housed on a different block.) On the following week Plaintiff was informed by Counselor Mr. Cook that he had been recommended for the Security Threat Group Management Unit / Gang Unit. The Plaintiff explained to Mr. Cook that he hadn't even gotten a response to his misconduct appeal. Mr. Cook told him the that S.C.I. Rockview had started the process on 4/28/22, the never had a hear or got any type of notice of this recommendation.

25   On 6/15/22, when Plaintiff went to see P.R.C where he was again informed the recommendation by S.C.I. Rockview to have him placed in the Security Threat Group Management Unit. (STGMU)

26.  On 6/20/22, Plaintiff was moved to L-block / A pod cells on the side with inmates who were refusing the program. There was no response to his appeals on the misconduct verdict or against placement in the STGMU.

27   On 7/20/22, Unit manager Mr. Riddle told Plaintiff he was in the program even though authorization was not given from Central Office or the appeals were answered.

- SCI Fayette's Program Review Committee members: Deputy Tina Walker, Major Michael Tkacs, and Debra Hawkinberry over exaggerated my reason for confinement is the Security Threat Group Management Unit. DC-141 No. D539215, stated I had took part in the plotting of a protest where hostages would have been taken. The Program Review Committee enhanced the story by stating on my DC-141, part 4 that I was part of a plan to kidnap and assault top administrative officials at SCI Rockview. By doing so they've increased the level of threat to the matter, placed a lable as a threat to staff on me, while making future placement difficult, and made me a likely target for vindictive staff members.

## IV.   LEGAL CLAIM(S)

You are not required to make legal argument or cite any cases or statutes.  However, state what constitutional rights, statutes, or laws you believe were violated by the above actions.  If you intend to assert multiple claims, number and set forth each claim in separate paragraphs. Attach additional pages if needed.

Violation of my 8th Amendment

Destruction of my property

Unconstitutional Retaliation

Violation of my 14th Amendment

Mental and Emotional Damage

Violation of my 1st Amendment

Respondent Superior

## V.   INJURY

Describe with specificity what injury, harm, or damages you suffered because of the events described above.

See attached

## VI.   RELIEF

State exactly what you want the court to do for you.  For example, you may be seeking money damages, you may want the court to order a defendant to do something or stop doing something, or you may be seeking both types of relief.  If you are seeking monetary relief, state your request generally.  Do not request a specific amount of money.

See attached

Legal claim(s)

1. Violation of my 8th Amendment

2. Destruction of my property

3. Unconstitutional Retaliation

4. Violation of my 14th Amendment "Right to due process"

5. Mental and Emotional Damage

6. Violation of my 1st Amendment

7. Respondent Superior

4. Violation of my 8th Amendment

• I was transferred 5 hours away from my family back to S.C.I. Fayette, falsely charged of a misconduct, and later housed in the Security Threat Group Management Unit. After filing a grievance on conditions of the housing unit and conduct of officer staff. The grievance was denied by Grievance Coordinator K. Brubaker. I reported the denied grievance to **DOC's** (BTI) agent "Mr. Almo" at S.C.I. Rockview 4/27/22, and the next day was transferred and found out on 6/15/22 that S.C.I. Rockview began the process to have me placed in S.T.G.M.U. the day I was transferred out. There wasn't even a misconduct filed.

• I've been placed in the S.T.G.M.U. steming from a misconduct, I had nothing to do with, no part of committing, and contain fabrications. S.T.G.M.U. (23 and 1, multiple strip search, no contact visits, limited number of phone calls, can no longer have communication with family or friends staff may suspect of having gang relations, and once in the S.T.G.M.U. program any misconduct can send you back.) And I am an inmate on the mental health roster.

Violation of my 8th Amendment

Fqt.
- 1. 4/28 to 5/5/22 – Denied clean clothes or shower.
  2. 4/28 to 5/13/22 – Denied property (as per facility procedures C.O.'s have 72 hrs. to provide inmates with their in-cell property. When once housed in R.H.U.), proper hygiene care products, and forced to wash myself with a ripped peice of my sheets from the bed. (JC-block/8 cell)
  3. 6/27 to 7/28/22 – Denied hour rec, only given one shower (between 6/27 to 7/28/22), 24 hour lockdown everyday, cold cells, Isolation, denied counseling or communication with Certified Peer Specialist (C.P.S.), denied T.V., (I am an inmate on the Mental Health roster) (LA-block/5 cell) Vinning-El v. Long, 482 F.3d 923, 924-25 (7th Cir. 2007), Spencer v. Bouchard, 449 F.2d 721, 728-29 (6th Cir. 2006)

2. Destruction of my property

- On 4/28/22 S.C.I Rockview threw away, destroyed, and left some of my personal property in my cell. When I was transferred by High Risk Transfer (HRT), furthermore while at S.C.I. Fayette more of my property was thrown away. I never even got to see my property till 5/15/22 at S.C.I. Fayette, whose officers went through my property 5 times before I seen it. Allen v. Thomas, 388 F.3d 147, 150 (5th Cir. 2004); Bell v. Johnson, 308 F.3d 594, 604-05 (6th Cir. 2002)

- 10/9/22 Grievance # 1001178 was filed on the water damage to my legal work, missing books, family photos, folder containing legal work and my white Adidas Sneakers. C.O. Kenizner was present when I mentioned the water damage and smell of smoke coming off my damaged legal work. Super. Armel denied my grievance and kept my evidence, I appealed to Central Office with what I had.

3. Unconstitutional Retaliation

- 75 inmates on A-block at S.C.I. Rockview on 4/25/22 conducted a protest of the facility administration's decision to take away the "Night Blockout". On 4/27/22 5-6 inmates from A-block were transferred. (Information obtained from inmate Carter) While talking to D.O.C. Parole dept. worker/ BII agent "Mr. Almo", I informed him of a grievance I filed on the hazardous conditions of the facility and conduct of the C.O.'s on D-block, prior to A-block's protest that was denied by facility Grievance Coordinator K. Brubaker, citing " grievance presents multiple issues".

   I was transferred back to S.C.I. Fayette on 4/28/22 the next day. I found 6/15/22 that S.C.I. Rockview even started the process to have me placed in the Security Threat Group Management Unit, the day after I spoke to BII. On 5/5/22 while at S.C.I. Fayette I received a misconduct and was charged with 2 misconducts in-connection to the A-block protest. I was given 120 days in the R.H.U. and then placed in the S.T.G.M.U.. Only alleged evidence was a CI's (or) CHS's hearsay. DC-141 Part 2(B) Hearing Action States" The CHS's had reported that IM Fann was named as one of the inmates that was involved in taking hostages and protesting on D-block had the incident went according to plan." Maurer v. Patterson, 197 F.R.D. 244, 247 (S.D.N.Y. 2000).

Unconstitutional Retaliation

• I was processed for the Security Threat Group
Management Unit (STGMU) by Rockview, the day after
I spoke to BII agent "Mr. Almo". Spraytte v.
Hoffner, 181 F. Supp. 2d 736, 742-45 (W.D. Mich. 2001)
(being labled as Security Threat)

• I was transferd further away from my family, who
live in Newark, N.J. and Wilkes-Barre, Pa. Rauser v.
Horn, 241 F. 3d 330, 333 (3rd Cir. 2001)

• I filed a grievance and it was denied. When asked my
thoughts of the facility by Mr. Almo. I told him about
it, and was charged as an individual in a protest on a
different housing 7 days later, then transferd the very
next day. Mitchell v. Horn, 313 F. 3d 523 (3d Cir. 2003)

• I was transferd a day after reporting a denied grievance
to BII agent "Mr. Almo", and received a misconduct 7 days
later dated 4/26/22 of incident. Gayle v. Gonyea, 313 F. 3d
677, 673 (2d Cir. 2002); Ward v. Dyke, 58 F. 3d 271, 274-75 (6th Cir. 1995)

• Misconduct # D529215 contained fabrications, which I've
mentioned in my appeals, grievance, and request to staff.
Tarlasprashad v. Bureau of Prisons, 286 F. 3d 576, 584-87
(D.C. Cir. 2002), Graton v. Coughlin, 81 F. Supp. 2d 381 (N.D.N.Y. 1998)

Unconstitutional Retaliation

• I reported a complaint to Department of Corrections (BII) agent "Mr. Alma", when he asked how I felt about S.C.I. Rockview. And I was charged with disciplinary charges, on the possibility that I would have taken part in a protest on D-block. Captain Davis and Major Torres alleged evidence is a C.I. who reported that my name was mentioned as someone who'd be involved. Cranston v. Coughlin, 81 F. Supp. 2d 381, 389-90 (N.D.N.Y. 1999)

• Misconduct incident is dated 4/26/22 the protest was 4/25/22, the report date is 5/4/22. Misconduct claims delayed due to investigation, but I was transferred from general population on 4/28/22. The day after I reported the denied complaint to Department of Corrections (BII). Misconduct claims I was placed in the R.H.U. on pre-hearing confinement on 4/26/22 at 0800hrs. and 2000hrs pending resolution. But I remained in general population from 4/25/22 - 4/28/22 on D-block and was allowed to come out for showers, phones, and Kiosk. I was never placed on investigation or given a misconduct on 4/26/22. Cornell v. Woods, 69 F.3d 1383, 1388-89 (8th Cir. 1995)

Unconstitutional Retaliation

- I was falsely charged with a misconduct for an incident on a different block. Williams v. Smith, 717 F. Supp. 523, 524-25 (W.D. Mich. 1989)

- Violation of D.O.C. "Code of Ethics" When Rockview presented a falsied document, and Central Office allowed Fayette to use the same information. Even when both Fayette and the D.O.C.'s Chief Hearing Examiner were informed of the false information. They were also informed that proof exist that could prove the truth.

- I was charged with disciplinary charges, incident dated 4/26/22 and reported 5/4/22, and recieved the misconduct on 5/5/22 while at Fayette. After I reported a denied grievance to D.O.C. (B.I.I) agent "Mr. Almo" on 4/27/22 at Rockview and then was transfered by High Risk Transfer (H.R.T.) on 4/28/22. Gayle v. Gonyea, 313 F.3d 677, 683 (2d Cir. 2002), Rodriguez v. McClenning, 399 F. Supp. 2d 228, 239-40 (S.D.N.Y. 2005)

Chronology: Unconstitutional Retaliation

Allen v. Thomas, 388 F.3d 147, 149 (5th Cir. 2004)

Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995)

3/18/22- In. Fann filed a grievance stating the hazardous conditions of D-block, and lewd/inappropriate conduct of the officer staff. (At S.C.I. Rockview) #972434

3/21/22- In. Fann's grievance was denied by facility Grievance Coordinator K. Brubaker, citing "Too many issues". Appealed on 3/28/22, denied by B. Solomon 4/8/22.

4/25/22- In. Fann went to his 8:20am-9:20am gym session, returning back from gym Im Fann took a shower than used the Kiosk and phone. Afterward he locked in his cell.

• From 1pm-3:30pm Im. Fann was in Mr. Letterman's Masonry class. (which can be proven by the attendance)

• Inmates from A-block at S.C.I. Rockview put together a plan to sit out in the dayroom in protest of the facilities decision, to take away the night-time block out. While they were in B-yard (information given to Im. Fann while on LB-pod at S.C.I. Fayette), Im. Fann would have been in School at the time of planning.

• S.C.I. Rockview went into a lockdown at approx. 4pm, Im. Fann and his cellmate learned of this from a guard on D-block

Pg.2

4/26/22 - S.C.I. Rockview remained on lockdown.

• Approx: between 10 or 11am Some people from Central Office came to talk to some of us on D-block.

• Approx: 6pm Sign-ups for phones and kiosk were done, Im. Fann signed up for kiosk 7:15am and phone 8:15am

4/27/22 - S.C.I. Rockview remained on lockdown.

• Approx: 10am Im Fann was taken from his cell to the Education Building to talk to Department of Corrections (BII) agent "Mr. Almo", who claim to work for the D.O.C.'s Parole department.

• Captain Wooster and his security team were present in the Ed building.

• Mr. Almo asked Im. Fann what he knew about the A-block pro-test, Im. Fann said " He only knew what the guards were saying, but he had heard talk of guys refusing to come in from yard. But he didn't believe it." Mr. Almo then asked Im. Fann about the facility, Im. Fann informed him of the grievance he filed that was denied. Im. Fann further informed Mr. Almo about the guards having sex in the D-block hub, he called it "orgies" and how he heard of an inmate dying on A-block while the guards were having sex in the bathroom.

pg3    Contin.

When asked if he knew of any specific individuals, he named Co. Ms. Miller and Lt. Rook.

• After talking to Mr. Almo, Im. Fann joked around with Capt. Wooster and then was escorted back to D-block. Where once on the block unit he walked back to his cell and locked in.

• Approx: 5pm or 6pm the people from Central Office came back and handed out memos stating how the Night blackout would not be taken.

• When the people from Central Office left, showers were conducted. There were at least 6 Co's present during showers, Co. Ms. Miller was one of the 6.

• After showers D-block inmates were allowed to use the phones and Kiosk. Im. Fann checked his messages on the Kiosk and then called his girlfriend Valeen Sanon, whom he had a visit set with for that Sunday (5/1/22).

4/28/22— Im. Fann taken from his cell in the morning hours, he was informed he had to speak with some one. Once off the block unit he was cuffed and escorted to in-take.

• Once in in-take Im. Fann was informed that himself and a number (no specific number) of inmates had to talk to Capt. Wooster.

Pg 4

• Approx: between 9am and 10am H.R.T. (High Risk Transfer) transported Im. Fann back to S.C.I. Fayette, where he was placed in the R.H.U. on Ac status.

• S.C.I. Fayette's P.R.C. team claimed not to know why Im. Fann was transferred back.

• From 4/28/22 to 5/4/22 Im. Fann remained on J-block/ A-pod on Ac status, till 5/4/22 after seeing the P.R.C. team again. He was moved to L-block/ c-pod still on Ac status.

5/5/22 - Approx: 10am Im. Fann received a DC-141 misconduct from S.C.I. Rockview charging him with two Class 1 misconducts, #15 Threating an employee or their family with bodily harm and #29 Engaging or encouraging unauthorized group activity, incident date 4/26/22, time 2000 hrs. Reported by Capt. D.R. Davis claiming Im. Fann was one of a number of individuals planning to protest and take administration members hostage. Also claiming to have placed Im. Fann in the R.H.U. on 4/26/22 at 0500hrs. The misconduct did not list any other inmates involved.

• Im. Fann was moved to J-block/c-pod on pre-hearing confinement.

Pg. 5

5/10/22- Im. Fann had misconduct hearing approx 10:30am. Hearing Examiner Ms. Rudziewski informed Im. Fann that S.C.I. Rockview hadn't sent anything to her (statements, videos, etc.), and that she wanted to postpone his hearing so she can get his witnesses. Inmate Fann signed waiver to postpone hearing.

5/13/22- Ms. Rudziewski never tried contact Im. Fann's witnesses and in fact had an in-camera reliability hearing with Major Torres of Department of Corrections (BII) to determine the reliability of the confidential informants. She never spoke to any C.I./CHS's only Major Torres, no C.I./CHS's were ever questioned by Ms. Rudziewski.

5/18/22- Im. Fann's hearing was resumed, Hearing Examiner Ms. Rudziewski explained didn't need to talk to Im. Fann's witnesses and found him guilty on misconduct charges. Im. Fann was given a sanction of 120 days on the possibility he would have protested on D-block (told by alleged C.I./CHS's).

6/15/22- Im. Fann was informed by S.C.I. Fayette's P.R.C. team, that S.C.I. Rockview had recommended he be placed in the Security Threat Group Management Unit on 4/28/22.

6/27/22- Im. Fann was place on L-block/A-pod on the side with all the inmates who refused the program.

* Im. Fann remained on L-block/A-pod from 6/27-7/28/22.

Pg. 6

In August - Im. Fann wrote to "Inmate Records" as well as L-block counselor Mr. Cook, he was trying to obtain certain files, but S.C.I. Rockview never sent them.

8/25/22 - At the instructions of Mr. Cook Im. Fann filed a grievance and mailed it to S.C.I. Rockview, but never got a response.

9/22/22 - Im. Fann found out S.C.I. Rockview still never sent his file from Mr. Cook.

10/8/22 - Im. Fann filed another grievance to S.C.I. Rockview, that was denied on 10/10/22.

10/10/22 - Im. Fann filed another grievance to S.C.I. Rockview's facility manager, Ms. Salamon, which was denied again on 11/16/22.

11/18/22 - Im. Fann filed his final grievance to Chief Hearing Examiner, Which was denied by Keri Moore claiming it was not legible on 12/30/22

1/2/23 - Im. Fann wrote Mr. Cook asking about his file, and Mr. Cook informed him, he recieved it.

#415702I pg 6 of 6 for GREGORY FANN

pg.7

In Conclusion:

Because of the grievance and what Im. Fann revealed to the Department of Correction (BII) agent "Mr. Alms" about S.C.I Rockview's officer staff, he was transfered and charged with a misconduct. No factual evidence exist, and the misconduct contained fabrications that could be proven, through security footage, phone records, Kiosk login, and school attend. But most of all his housing unit never took part in a protest.

Im. Fann was given an unfair hearing, which also violated his 14th amendmet, and placed in the Security Threat Group Management Unit by the same people he spoke to Department of Corrections (BII) about.

— I sent messages from my tablet pertaining to this situation to my family.

— 7/26/22 to Patrisha Stennett X
— 2/13/22 to Susan Wosley
— 4/27/22 to Susan Wosley
Grievance # 972434

**Inbox**

|  |  |
|---|---|
| From: | Fann, Gregory |
| Date Received: | 02/13/2022 07:46 AM CST |
| Subject: | Urgent News!!! |

I know I'm probably gonna hell for this information I'm about to tell you. But someone has to know about what happened in here a few months ago. So, I can't say that my source is 100%, but it's from someone on the inside. Well, there was a hanging in here a few months ago, but what was told to me by a staff member was that the guards on that block and shift were having sex in the hub when it happened. And that the inmate that died was hung by his cellmate. And now the Superintendent is giving them hell about it. Just something that needed to be shared with you, so someone knows what's going on. Much love Greg

4. Violation of my 14th Amendent "Right to due process"

- On May 5, 2022 after being transfered from S.C.I. Rockview on April 28, 2022, to S.C.I Fayette where I had just left 3 years prior. I was given a DC-141 # D539215 and two class 1 misconduct charges # 15 Threatening an employee or their family with bodily harm and #29 Engaging or encouraging unauthorized group activity. I was named as one of the inmates involved in planning an inmate protest that happened on A-block at S.C.I Rockview, but I was housed on D-block and there are no other inmates indentified on my DC-141.

- Misconduct claims there were others involved, but doesn't list any others.

- I was never informed of a misconduct or investigation till May 5, 2022 while on A.C. unit in S.C.I. Fayette. An inmate facing disciplinary charges must have an opportunity to marshal the facts and prepare a defense.

- Misconduct was date (incident) May 26, 2022 the day after A-block's protest, it claims I was placed in the R.H.U. at 8:00pm on Pre-hearing Confinement. I remained in general population, till May 28, 2022 when I was transfered out.

Violation of my 14th Amendent "Right to due process"

• An inmate facing disciplinary charges must have an opportunity to marshal the facts and prepare a defense - I was already transfered and placed in the R.H.U. at S.C.I. Fayette, and S.C.I. Rockview had started the process to have me placed in the Security Threat Group Mangement Unit.

• A prisoner must recieve written notice of claimed violations at least 24 hours in advance of the hearing. Even if they are under investigation and must be provided with a written summary of evidence relied upon by the fact finder in reaching it's disciplinary decision. Second, "an inmate facing disciplinary charges must have anopportunity to marshal the facts and prepare a defense." Giano v. Sullivan, 709 F. Supp. 1209, 1214 (S.D.N.Y 1989)(citing Wolff, 418 U.S. at 564, and Patterson v. Coughlin, 761 F.2d 886, 890(2d Cir. 1985), cert. denied, 474 U.S. 1100, 88 L. Ed. 2d 916, 106 S. Ct. 879 (1986))" The inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Ordinarily, the right to present evidence is basic to a fair hearing. Wolff, 418 U.S. at 566.

Violation of my 14th Amendment "Right to due process"

• The hearing examiner relied on the testimony of Major Torres and Captain Davis's statement. I was unconstitutionally denied my rights of a fair hearing. Griano v. Sullivan, 709 F. Supp. 1204, 1213 (S.D. N.Y. 1989)

• Transferred 5 hours away from my family, personal property damaged and/or missing, placed in the Security Threat Group Unit after a 120 day DC sanction, no contact with family, Unit team at S.C.I. Fayette holding mail (out-going and in-coming), cold cells, poor medical attention, and I'm a inmate on the mental health roster w/ history in substance abuse on 23 and 1. (Hardship)

• Disciplinary charges and placement in the Security Threat Group Management Unit may result in a very bad response to the Commutation I filed in 2021. Wolff v. McDonnell, 418 U.S. 539, 555-56, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974).

• The hearing examiner claimed there was a "preponderance of evidence", Major Torres (BII) made the same claim, but there was none but his statement. Superintendent v. Hill, 472 U.S. 445, 454, 86 L. Ed. 2d 356, 105 S. Ct. 2768 (1985)

• Chief Hearing Examiner Keri Moore, chose not to investigate any appeals/ grievances and basely sides with facility.

Violation of my 14th Amendment "Right to due process"

• 28 C.F.R. § 541.17(d)(1990) "An inmate has the right to be present throughout the DHO hearing except during a period of deliberation or when institutional security would be 'jeopardized.'" – I was transferred to a different facility and the hearing examiner, only spoke to Major Torres through video. There was no security reasons for not allowing me to be present. Nor, was I allowed to ask any type of questions to Major Torres, this was conducted without my Knowledge. Bills v. Henderson, 631 F.2d 1287, 1296–99 (6th Cir. 1980)

• As per the D.O.C.'s policy statement, Dc-ADM 801 section 5 – Appeals, Subsection (c) Final Appeals, Chief Hearing Examiner (6). – Chief Hearing Examiner has 7 working days once all documentation has been received to investigate claims and issue a verdict. – Chief Hearing Examiners D. Varner and Kerri Moore overran the allotted time frame without notice of reason, nor did they investigate my claims, they just accepted the decision of S.C.I. Fayette. Just as they did in DC-ADM 802 section 2 – Administrative Hearings, subsection (c) Appeals. They overran the allotted time frame and then accepted the decision of S.C.I. Fayette to place me in the Security Threat Group Management Unit.

Violation of my 14th Amendment "Right to due process"

- Ms. Rudzienski took Major Torres and Captain Davis statements as evidence, when there was none.
  - A determination of guilt on such a record, with no primary evidence of guilt in the form of witness statements, oral or written, or any form of corroborative evidence, amounts to a determination on the blind acceptance of the prison officer's statement. Hensley v. Wilson, 850 F.2d 269, 276-77 (6th Cir. 1988)

- Misconduct #D519215 claims I was one of a number of inmates involved, but no other inmates are named on my DC-141 as "involved" or "witness", nor have I even seen a witness statement naming me. Chavis v. Rowe, 643 F.2d 1281 (7th Cir), cert. denied, 454 U.S. 907, 70 L. Ed. 2d 225, 102 S. Ct. 415 (1981)

- Cheif Hearing Examiners D. Varner and/or Kerri Moore never investigated the misconduct ~~but~~ only sided with the facility's decision on appeals. McColl-Bey v. Franzen, 585 F. Supp. 1295, 1298 (N. D. Ill. 1984)

- CHE's report that IM Fenn was "named" as someone who'd be involved, was insufficient evidence to support discipline. Lashley v. Wakefield, 367 F. Supp. 2d 461, 467-68 (W.D.N.Y. 2005)

Violation of my 14th Amendent "Right to due process"

• I was denied my witnesses, the right to question witnesses (as per DC-ADM801, section 3 Misconduct Hearings, subsection (D) witnesses (3.)), and information relevant for a fair defense was withheld. Brown v. Blaine 833 A.2d 1166 (Pa. Commw. 2003)

• On 5/13/22 at 1153hrs — Ms. Rudzienski, (the hearing examiner) conducted an in-camera interview with Major Torres of Department of Corrections (BII) to determine the reliability of the confidential informants used in the investigation. The reliability hearing was conducted in-camera as the nature of the reliability evidence could reveal the identities of the informants. Mauser v. Patterson, 197 F.R.D. 244, 247 (S.D.N.Y. 2000)

• Ms. Rudzienski never questioned or even spoke to any confidential informants, she only spoke specifically to Major Torres who provided alleged evidence under oath, as well as the confidential informant's statements. Helms v. Hewitt, 655 F.2d 487 (3d Cir. 1981), rev'd on other grounds, 459 U.S. 460, 74 L.Ed. 2d 675, 103 S. Ct. 864 (1983), on remand, 712 F.2d 48 (3d Cir. 1983).

• I never received a hearing before transfer or an opportunity to examine evidence of info from Staff.

**5.** Mental and Emotional Damage

　　Trobaugh v. Hall, 176 F. 3d 1087 (8th Cir. 1999)

- Between the transfer from S.C.I. Rockview and the 5 searches of my personal property in the storage rooms at S.C.I. Fayette. My food, clothes, books, legalwork, family photos, religious items and letters went missing. (I can never get that stuff back.) Jones v. Bock, 549 U.S. 199, 222-23, 127 S. Ct. 910 (2007); Robinson v. Page, 170 F. 3d 747, 749 (7th Cir. 1999)

- I've been placed in a Lv. 5 housing Unit, 5 hours or more away from my family, labled a threat to the security runnings of the facility, cold cells, multiple strip searches, no contact visits, limited phonecalls, I'm an inmate on the mental health roster. All because I reported a denied complaint on 4/27/23. Haynes v. Stephenson, 2008 WL 4368994, *19 (E.D. Ark, Sep 19, 2008), Waters v. Andrews, 2000 WL 1611126, *4 (W.D.N.Y., Oct. 16, 2000)

- I trusted the system and reported the context of my denied grievance, and was charged with a fabricated misconduct and placed in Security Threat Group Management Unit. Haskins v. Lenar, 395 F.3d 372, 375 (7th Cir. 2005)

- Because of the complaints I filed, the Unit Team on L-block cancelled my visits with my family and did not mail out my letters to my family, nor gave me their's.

6 Violation of my 1st Amendment

• I informed Central Office Parole Dept. worker/D.O.C. (BII) agent "Mr. Almo" of a grievance, that was denied, and was transferred, charged with a misconduct, given a 120 days D.C. sanction, and placed in the Security Threat Group Management Unit. (STGMU)

• S.C.I. Rockview's Officers threw away my Native American religious items.
— Medicine bag w/ herbs inside and pipestone
— Prayer Feather w/ beaded handle
— Leather braided headband
— Paperwork and songs

• I was transferred the day after I informed (BII) agent "Mr. Almo" of a grievance. On 4/28/22, S.C.I. Rockview put in a recommendation to place me in the Security Threat Group Management Unit the same day of my transfer. Rouse v. Benson, 193 F.3d 936, 941 (8th Cir. 1999)

• I am Cherokee Native and am being denied my right to purchase religious items of my practice.

Violation of my 1st Amendment

- A viable claim of First Amendent retaliation contains
5 basic elements: (1) an assertion that a state
actor took some adverse action against an inmate (2)
because of (3) that prisoner's protected conduct, and
that such action (4) chilled the inmate's exercise of
his First Amendent rights (or that the inmate suffered more
than minimal harm) and (5) did not reasonably advance
a legitimate correctional goal. Rhodes v. Robinson, 408
F. 3d 559, 567-68 (9th Cir. 2005); See also Hines v. Gomez,
108 F. 3d 265, 267 (9th Cir. 1997) (retaliation claims requires
an inmate to show (1) that the prison official acted in
retaliation for the exercise of a constitutionally protected
right, and (2) that the action "advanced an legitimate
penological interest"). — I filed a grievance and then
informed BII agent "Mr. Almo" about it and what was
going on at S.C.I. Rockview and the next day I was
transfered and days later charged in a DC-141.

7.   Respondent Superior

• Superintendent Eric Armel and Mr. George Little
of the Department of Corrections came on to
L-block/A-pod on 11/7/22 11:53am. I spoke to
Mr. Little concerning my being placed in the
Security Threat Group Management Unit, how I'm
not supposed to be in here, and my grievance
#1000670 concerning the issues of Hardship and
Unsanitary conditions from 9/30/-10/5/22, and how I
contracted a skin infection. Rhode v. Dellarciprete,
845 F.2d 1195 (3d Cir. 1988)

• Superintendent Bobby-Jo Salaman was aware of inmate
Fam's complaint filed in grievance #977474.

## V. Injuries

- In August, I informed the medical department of my swollen ankle. My ankle has been swollen for months, the only thing that was done. My ankle was x-rayed (which showed alot of swelling), my blood was drawn, my blood pressure was tested, and I was given an ankle sleeve. In November my ankle and foot was dark red, I asked the nurse to send me to a hospital. She said I didn't need one and nothing else was done.

- Due to inmates flooding their cells on 10/4/22, my cell was flooded when all the toilet water and waste came out of other cells. The guards didn't allow the black workers to mop out the cells, nor were we given any type of cleaning solution. I had to clean it myself, and after standing in other peoples waste and toilet water for 4 hours (from 2:45pm-7:15pm). I had contracted a skin infection on my hands, feet, knees, and legs, nurse Lauren thought it was eczema at first and gave me Triamcinolone Acetonide cream. When it got worst she put me on 100mgs of Doxycycline. I filed a grievance about it all the way up to the Chief Hearing Examiner, but it was denied by Keri Moore. (see grievance # 1000670)

I hold S.C.I. Rockview also responsible for putting me in this situation, as well as George Little whom I spoke to on 11/7/22 about this matter.

## V. Injuries

- I am an inmate on the Mental Health roster, whom has been placed on long-term confinement due to a false mis-conduct by S.C.I. Rockview. Also placed in the Security Threat Group Management Unit at the request/recommendation of S.C.I. Rockview.

  I've written Dr. Savander of S.C.I. Fayette's Psych department, about how I've been seeing and hearing things (both affects of long-term isolation). Yet the only thing done, I was given stronger pills. From 6/22/22-7/22/22 no doctor tried to help. I sat isolated with those who refused the program.

- Chief Hearing Examiner Keri Moore denied my grievance about how I was not recieving proper medical for my swollen ankle grievance # 1015092

VI. Relief

• I'm request that the recommendation, proceeding, and approval for the Security Threat Group Management Unit/ Gang Unit, and the fabricated misconduct be expunged from my inmate record.

• I'm requesting compensation for the destruction/mishandling of my personal property such as: family photos, legalwork, books, clothes/sneakers, letters, and cards. Items that can never be replaced.

• I am an inmate on the Mental Health Roster, who has been locked in a Lv.5 housing unit for 350+ days, whom has suffered mentally and medically throughout that time. All for reporting a rejected grievance (#972434) to the D.O.C.'s BII agent Mr. Alma, I was falsely accused of a misconduct. I'm requesting $1,500 for each day spent in a Lv.5 housing unit out of retaliation.

• I am requesting $50,000 for punitive damage, and illegal placement under false pretense.

The Unit States Supreme Court has described three instances in which an administrative remedy is unavailable as a practical matter: "(1) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is so opaque that it becomes, practically speaking, incapable of use, such as when no ordinary prisoner can discern or navigate it; or (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Shumanis v. Lehigh Cnty., 675 F. App'x 145, 148 (3d Cir. 2017) (quoting Ross, 136 S. Ct. at 1859-70).

VII. Exhaustion of Administrative Remedies Administrative Procedures

C. Grievance Claims

\# 981200 - about misconduct from Rockview

\# 986343 - about Central Office overrunning time to respond to appeal

\# 987193 - about not recieving my property on L-block.

\# 995055 - denial of my religious items

\# 1000670 - about hardship/unsanitary conditions that lead to skin infection

\# 1000680 - about STGMU program

\# 1001178 - about my damaged/missing property

\# 1002309 - about S.C.I. Rockview refusing to send my file

\# 1002810 = In connection to 995055

\# 1004445 - In connection to 1000670

\# 1006203 - In connection to 1000670

\# 1008088 - about STGMU's Unit Team tampering with inmate mail

\# 1013940 - about 60 day Phase freeze after talking to Secretary Little

\# 1014916 - In connection to 995055

\# 1015092 - about my swollen ankle

\# 1000164 - about the cold cells

\# 1022705 - In connection to 1008088

\# 1019996 - In connection to 995055

\# 1024880 - about my ankle again

- Declaration of Angelo Lopez, former Unit Manager of the STGMU at SCI-Forest. The goal of the STGMU program is to change inmates' behavior via movement through five phases of programing and take steps toward being able to return to a general population setting. — What behavior did I have to change? And did the STGMU change between SCI-Forest and SCI-Fayette? I attended Masonry classes, Native service, had a block job, and just filed for commutation.

- The program uses a variety of programs, in-cell train (one SMU packet) and video tools (Lie), progressive privileges, including commissary, out-of-cell activites (not till phase 3), and close monitoring by Unit Team and psychology staff to assure that inmates progress and achieve the benefits of the program.

- The STGMU is a non-punitive program that opend at SCI-Forest in 2014. The program is designated for inmates who have poor prison adjustment, numerous misconducts, and/or known gang affiliations. — I followed regulation and facility rule to the best of my ability.

## VII.   SIGNATURE

By signing this complaint, you represent to the court that the facts alleged are true to the best of your knowledge and are supported by evidence, that those facts show a violation of law, and that you are not filing this complaint to harass another person or for any other improper purpose.

Local Rule of Court 83.18 requires *pro se* plaintiffs to keep the court informed of their current address. If your address changes while your lawsuit is being litigated, you must immediately inform the court of the change in writing. By signing and submitting the complaint form, you agree to provide the Clerk's Office with any changes to your address where case-related papers may be served, and you acknowledge that your failure to keep a current address on file with the Clerk's Office may result in dismissal of your case.

*JL-5698*

Signature of Plaintiff

*10/19/23*

Date



# UNITED STATES POSTAL SERVICE ®

# PRIORIT MAIL

70i

## PRIORITY
★ MAIL ★

UNITED STATES POSTAL SERVICE ®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM: Gregory Fann Jr.   JL-5698
S.C.I. Fayette
Smart Communications / PA DOC
P.O. Box 33028
St. Petersburg, Fl. 33733-8028

## TO:
United States District Court
Middle District of Pennsylvania
228 Walnut Street
P.O. Box 983
Harrisburg, Pa. 17108

# MAILING ENVELOPE
## FOR DOMESTIC AND INTERNATIONAL USE

To schedule free Package Pickup,
scan the QR code.



RECEIVED
HARRISBURG, PA

OCT 27 2023

PER_____
DEPUTY CLERK