IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY O. FANN, JR., | No. 4:23-CV-01787 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| BOBBY-JO SALAMON, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

JUNE 5, 2024

Plaintiff Gregory O. Fann, Jr., is currently incarcerated at the State Correctional Institution (SCI), Pine Grove, located in Indiana, Pennsylvania. He filed the instant *pro se* Section 1983[1] action in 2023, claiming constitutional violations by mostly high-level prison officials at the Pennsylvania Department of Corrections (DOC). Presently pending is Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motion to dismiss and permit Fann limited leave to amend.

I. BACKGROUND

Fann's complaint revolves around events that allegedly occurred in 2022 at SCI Rockview and SCI Fayette. According to Fann, on April 25, 2022, while he

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

was incarcerated at SCI Rockview, inmates on "A-block" participated in a protest, causing the facility to go on lockdown.[2] Fann recalls that he was housed on "D-block" at that time and eventually figured out that the facility had been locked down due to the lack of inmate movement.[3]

The following day, April 26, prison officials from "Central Office" came onto D-block and interviewed some of the inmates.[4] Fann was interviewed by a female official from SCI Coal Township, and he informed her about a previous grievance he had filed at SCI Rockview regarding hazardous conditions on the block and various staff misconduct.[5]

The next day, Fann was handcuffed and taken to the "Education building" for another interview.[6] Fann was questioned by a "Mr. Almo" about the inmate protest as well as the conditions at SCI Rockview.[7] Fann responded that he knew very little about the protest, only that some of the inmates were upset because prison officials were taking away "night blockout," which meant that prisoners would be forced to either go outdoors or remain locked in their cells from 3:30 p.m. until the next day.[8] Fann also voiced his complaints about the conditions at

---

[2] Doc. 1 ¶ 1.
[3] Id.
[4] Id. ¶ 2.
[5] Id.
[6] Id. ¶ 3.
[7] Id. ¶ 4.
[8] Id.

SCI Rockview, including misconduct by the guards.[9] Fann told Mr. Almo that corrections officers on D-block "like to have sex in the D-block hub, bathroom, or counselor's office" while working, and he reported other sexually inappropriate or physically abusive behavior by certain D-block corrections officers.[10]

The following day—April 28—Fann was transferred to SCI Fayette.[11] He was not told why he was transferred and he was placed in administrative custody at SCI Fayette.[12] Six days later, the Program Review Committee (PRC) reviewed his administrative custody and ordered that it continue, noting in its written decision that Fann was in administrative custody due to an "investigation."[13]

On May 5, 2022, Fann received a misconduct (number D539215) for "threatening an employee or their family with bodily harm" and "engaging or encouraging unauthorized group activity."[14] The misconduct was issued on May 4 by Captain D.R. Davis and indicated that Fann had been identified by the DOC's Bureau of Investigations and Intelligence (BII) as being involved in a plot to take SCI Rockview administration members hostage during "an unauthorized inmate protest on April 25, 2022."[15] Fann alleges that he was moved from L-block to J-Block and placed in a cell where an inmate had recently been pepper sprayed that

---

[9] Id.
[10] Id. ¶¶ 4-11.
[11] Id. ¶ 15.
[12] Id. ¶¶ 14-15.
[13] Id. ¶ 16; Doc. 1-1 at 1.
[14] Doc. 1 ¶ 17; Doc. 1-1 at 3.
[15] Doc. 1 ¶ 17; Doc. 1-1 at 3.

3

still contained pepper spray and vomit, as well as "metal shards" from a rusty broken floor drain.[16]

Fann denied the charges in the misconduct, pointing out that he had alibis for his whereabouts on April 25 (the day of the protest), and that he was housed on D-block, not A-block where the protest occurred.[17] On May 10, Fann had a hearing with a Disciplinary Hearing Officer (DHO), where he maintained that he wanted to call numerous witnesses and present exculpatory physical evidence (video footage, phone records, class attendance records, *etc.*) to prove his innocence.[18] According to Fann, the DHO postponed the hearing to "get ahold of his witnesses" and had him sign a waiver of his right to have a hearing within 7 days of notice of the misconduct charge.[19]

On May 18, 2022, the DHO resumed the hearing and determined that Fann had committed both charged offenses.[20] The DHO relied primarily on a May 13 in-camera interview with BII Major Torres as to the reliability of a confidential informant and the content of that informant's report.[21] According to Torres, the informant had identified Fann as one of the inmates involved with planning the protest and hostage incident and was "going to be involved in taking hostages and

---

[16] Doc. 1 ¶¶ 17-18.
[17] *See id.* ¶¶ 21-22; Doc. 1-1 at 5.
[18] Doc. 1 ¶¶ 21-22.
[19] *Id.* ¶ 22; Doc. 1-1 at 6.
[20] Doc. 1 ¶ 24; doc. 1-1 at 6-7.
[21] *See* Doc. 1-1 at 7.

protesting on D Block had the incident [gone] according to plan."[22]  Fann was sentenced to an aggregate punishment of 120 days' disciplinary custody.[23]  He appealed, but his appeals were denied.[24]

The following week, Fann learned that SCI Rockview officials had recommended him for the "Security Threat Group Management Unit" (STGMU) and had initiated that process on April 28, 2022.[25]  On June 15, the PRC again informed him that SCI Rockview officials had recommended that he be placed in the STGMU.[26]  At some point, Fann was placed into the STGMU program, although he does not know exactly when this occurred.[27]  The documents he attached to his complaint indicate that STGMU placement was officially "approved" on July 27, 2022.[28]

Based on these allegations, Fann sues six defendants: SCI Rockview Superintendent Bobby-Jo Salamon, Former DOC Secretary Gregory Little, Captain D.R. Davis, BII Major Torres, DOC Secretary Laurel Harry, and BII Director James Barnacle.  He appears to raise the following Section 1983 claims: (1) Eighth Amendment conditions of confinement; (2) Fourteenth Amendment procedural due

---

[22] *See id.*
[23] *Id.* at 8.
[24] *Id.* at 9-13.
[25] Doc. 1 ¶ 24.
[26] *Id.* ¶ 25.
[27] *Id.* ¶ 27.
[28] *See* Doc. 1-1 at 33-34.

5

process; (3) Fourteenth Amendment deprivation of property without due process of law; and (4) First Amendment retaliation.[29]

Defendants move to dismiss Fann's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[30] Fann timely filed a brief in opposition.[31] Defendants did not file a reply brief and the time in which to do so has passed, so Defendants' Rule 12(b)(6) motion is ripe for disposition.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[32] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[33] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[34]

---

[29] *See* Doc. 1 at pp. 20, 22-46.
[30] Doc. 16.
[31] Doc. 18.
[32] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[33] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[34] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[35] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[36] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[37] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[38] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[39]

Because Fann proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[40] This is particularly true when the *pro se* litigant, like Fann, is incarcerated.[41]

## III.    DISCUSSION

Defendants contend that Fann's Section 1983 claims suffer from material pleading deficiencies. After careful consideration, the Court agrees.

---

[35] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[36] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[37] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[38] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[39] *Iqbal*, 556 U.S. at 681.
[40] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[41] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

### A. Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[42] Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[43] Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[44] Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[45]

Fann sues six DOC defendants, most of whom are high-level officials. As to the alleged unconstitutional conduct of Little, Harry, and Barnacle, Fann's complaint is completely silent. There are no allegations of wrongdoing by these individuals, and most of their names appear only in the caption and defendant-identification section of the complaint. Although Fann does include allegations of

---

[42] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).
[43] *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).
[44] *Id.* (quoting *Rode*, 845 F.2d at 1207).
[45] *See id.* at 374 (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

involvement by Salamon, it appears that she was only involved in the grievance review process,[46] which is insufficient for Section 1983 liability. Additionally, Fann claims that he "spoke to" Little about certain issues in November 2022,[47] but at that time the alleged unconstitutional conduct had already occurred.

In his brief in opposition, Fann repeatedly asserts that these high-level officials are responsible for the "care, custody, and control" of all DOC inmates and staff,[48] but this is a quintessential *respondeat superior* allegation, which does not implicate Section 1983 liability. Accordingly, because Fann does not allege how these four Defendants were personally involved in the incidents underlying his complaint, they must be dismissed pursuant to Rule 12(b)(6).

Fann also sues Davis and Torres. He alleges that they were involved in the issuance and prosecution, respectively, of a fabricated misconduct. Such assertions are sufficient to plead personal involvement for a Section 1983 claim. The Court next turns to the sufficiency of the claims themselves.

### B. Eighth Amendment Conditions of Confinement

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort."[49]

---

[46] *See* Doc. 1 at p. 34.
[47] *See id.* at p. 47.
[48] *See* Doc. 18 at 4.
[49] *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

Nevertheless, the state cannot subject an inmate to cruel and unusual punishment or "inhumane treatment," such as deprivation of "identifiable human need[s]" like "food, clothing, shelter, medical care, and reasonable safety[.]"[50]

To prevail on an Eighth Amendment conditions-of-confinement claim, a prisoner-plaintiff must plausibly allege both objective and subjective elements.[51] Objectively, the inmate must demonstrate that "the prison official deprived the prisoner of the minimal civilized measure of life's necessities," often referred to as a "sufficiently serious" deprivation.[52] "The benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they [were] 'incarcerated under conditions posing a substantial risk of serious harm.'"[53]

Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety."[54] Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm."[55] Deliberate indifference is a high

---

[50]  *See Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted).
[51]  *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015)
[52]  *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *Wilson*, 501 U.S. at 297).
[53]  *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2023) (quoting *Farmer*, 511 U.S. at 834).
[54]  *Chavarriaga*, 806 F.3d at 226 (citing *Farmer*, 511 U.S. at 834).
[55]  *Id.* at 227 (citing *Farmer*, 511 U.S. at 842).

bar and requires a plaintiff to show that the defendant "recklessly disregard[ed] a substantial risk of serious harm."[56]

Fann alleges that from April 28 to May 5, 2022, he was denied clean clothes and a shower.[57] He further alleges that, from April 28 to May 13, 2022, he was denied "proper hygiene care products" and was "forced to wash [him]self with a ripped piece of [his] sheets from the bed."[58] He also claims that from June 27 to July 28, 2022, he was only given one shower, was denied recreation, was locked down 24 hours a day, and was denied counseling.[59]

Assuming without deciding that the foregoing conditions—taken together—constitute a sufficiently serious deprivation, Fann's Eighth Amendment claim still fails because he has not alleged that any Defendant acted with deliberate indifference toward his health or safety. In other words, Fann does not plead Defendants' actions or inactions with respect to his conditions of confinement at SCI Fayette. He does not allege that any Defendant caused the purported conditions, knew about the conditions and failed to take corrective action, or was aware that failing to remediate those conditions would put Fann at substantial risk of serious harm. Fann's Eighth Amendment conditions-of-confinement claim, therefore, must be dismissed.

---

[56] *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citation omitted).
[57] Doc. 1 at p. 23.
[58] *Id.*
[59] *Id.*

11

### C. Fourteenth Amendment Procedural Due Process

To plausibly state a Section 1983 claim for infringement of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"[60] If a plaintiff cannot identify a protected interest that is "at stake," the analysis is at an end.[61]

The gravamen of Fann's due process claim is that he was charged with an allegedly fabricated misconduct, convicted of the charged offenses without sufficient evidence, and given 120 days' disciplinary custody as a punishment. Fann cannot state a procedural due process claim because he has not identified a protected liberty interest that is at stake.

The Supreme Court of the United States has held that disciplinary segregation alone—under conditions that mirror those "imposed upon inmates in administrative segregation and protective custody"—generally does not reflect an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" such that it implicates a protected liberty interest under the Fourteenth Amendment.[62] And the United States Court of Appeals for the Third

---

[60] *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).
[61] *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Hill*, 455 F.3d at 234-35.
[62] *Sandin v. Conner*, 515 U.S. 472, 484, 486 (1995).

Circuit has repeatedly held that disciplinary segregation for periods longer than that which Fann experienced does not rise to the level of an atypical and significant hardship.[63] Therefore, because Fann has not identified a protected liberty interest that is at stake for his Fourteenth Amendment procedural due process claim, the analysis is at an end and this claim must be dismissed.

### D. Fourteenth Amendment Deprivation of Property

Fann also alleges that prison officials destroyed or threw away his personal property.[64] As best the Court can discern, he appears to be raising a Fourteenth Amendment claim of deprivation of property without due process of law.[65] This constitutional tort, however, has significantly limited application. Specifically, such a due process claim is unavailable when "adequate state post-deprivation remedies are available."[66]

Fann's complaint is silent as to whether adequate state post-deprivation remedies exist for the alleged destruction of his personal property. However, the Court observes that state tort law likely provides a remedy for claims like those Fann is asserting.[67] The United States Court of Appeals for the Third Circuit has

---

[63] *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months); *Torres v. Fauver*, 292 F.3d 141, 151 (3d Cir. 2002) (135 days); *Griffin v. Vaughn*, 112 F.3d 703, 705-07 (3d Cir. 1997) (fifteen months); *Dunbar v. Barone*, 487 F. App'x 721, 725 (540 days).
[64] Doc. 1 at p. 24.
[65] *See Hudson v. Palmer*, 468 U.S. 517 530, 533 (1984).
[66] *Id.* at 533.
[67] *See* 42 PA. CONS. STAT. § 8522(a), (b)(3) (waiving state statutory sovereign immunity for negligent acts related to the "care, custody or control of personal property in the possession or control of Commonwealth parties"); *Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158, 160

also held that the prison grievance process constitutes an adequate post-deprivation remedy for claims like those asserted here, even if the plaintiff disagrees with the results.[68] Fann, in fact, avers that he filed a grievance about this issue.[69] Thus, if Fann is attempting to raise a Fourteenth Amendment deprivation-of-property claim with respect to the destruction of his personal property, that claim fails as a matter of law and must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### E. First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[70] To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and

---

(3d Cir. 2014) (nonprecedential) (noting that district court correctly dismissed Fourteenth Amendment due process property deprivation claim due to existence of state post-deprivation remedies); *see also Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. Ct. 1987) (explaining intentional tort of conversion).
[68] *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000).
[69] *See* Doc. 1 at p. 24.
[70] *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

(3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[71]

The predominant claim in Fann's complaint sounds in retaliation. He alleges that because he filed a grievance complaining about conditions at SCI Rockview (including staff misconduct) and spoke directly to DOC investigators about these same issues, he was transferred to a distant prison farther from his family, charged with a fabricated misconduct, and recommended for placement in the STGMU.

Fann has clearly identified protected First Amendment conduct: filing a formal grievance and reporting staff misconduct to an investigator. He has also plausibly alleged adverse actions taken against him: transfer to a distant prison farther away from his family, a fabricated misconduct resulting in disciplinary custody, and—possibly—the STGMU recommendation.

The problem with Fann's retaliation claim concerns the third element—causation. Fann does not allege *who* took most of the adverse actions or *why* those officials would retaliate against him for his protected conduct. For example, Fann never alleges who made the transfer decision or the STGMU recommendation. It is possible that Fann is including Davis and Torres as potential perpetrators of retaliation, as they participated in the misconduct proceedings. However, Fann

---

[71] *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

does not allege that either Davis or Torres had knowledge of his protected conduct or that they had any reason to retaliate against him. After all, Fann did not complain about the conduct of Davis or Torres in his grievance[72] or during his interviews with investigators, nor does he allege that he reported his complaints to either Defendant. It is well settled that causation cannot be inferred simply by asserting that a plaintiff pursued some protected activity (like a lawsuit or prison grievance) against a defendant or nonparty prison official who is not the alleged perpetrator of the retaliatory adverse action.[73] Such general allegations fail to establish or even infer knowledge of the protected conduct and they likewise fail to show why a defendant would take the alleged adverse action.

Accordingly, Fann's First Amendment retaliation claim (or claims) must be dismissed pursuant to Rule 12(b)(6). Dismissal will be without prejudice, as it is possible that Fann could amend his pleading to state a retaliation claim. If he does

---

[72] *See* Doc. 1-1 at 18.
[73] *See, e.g., Nunez v. Wetzel*, No. 1:21-cv-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (collecting cases); *Kendrick v. Hann*, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); *Murray v. Smithbower*, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021); *Horan v. Collins*, No. 1:13-cv-00140, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016); *Victor v. Lawler*, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); *Evans v. Rozum*, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original)); *Royster v. Beard*, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), *aff'd* 308 F. App'x 576 (3d Cir. 2009) (nonprecedential) (agreeing with district court analysis).

amend, Fann must plausibly allege a causal connection between his protected conduct and an adverse action taken by a Defendant or Defendants.

### F. Official Capacity Claims

Fann sues all Defendants in their individual and official capacities.[74] However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[75] This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[76] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[77] There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[78]

---

[74] *See* Doc. 1 at p. 5-7.
[75] U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).
[76] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).
[77] *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).
[78] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

Fann seeks compensatory and punitive damages. To the extent those damages are sought against Defendants in their official capacities, such claims are barred by Eleventh Amendment sovereign immunity. Fann also requests that his placement in the STGMU be rescinded and the at-issue misconduct be expunged. This type of prospective injunctive relief can be pursued through an official capacity claim. However, because Fann has failed to plausibly allege a constitutional violation against any Defendant, no official capacity claim survives Rule 12(b)(6) scrutiny.

### G. Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[79] To the extent Fann raises a Fourteenth Amendment deprivation-of-property claim in his complaint, that claim will be dismissed with prejudice. Granting leave to amend would be futile in light of available state post-deprivation remedies.

Fann's Fourteenth Amendment procedural due process claim will also be dismissed with prejudice. Fann has not, and cannot, identify a protected liberty interest for this claim. His punishment—disciplinary segregation for 120 days—simply does not rise to the level of an atypical and significant hardship such that it

---

[79] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

could implicate due process protections.  Fann will be granted leave to amend his other Section 1983 claims if he is able to plausibly plead additional facts—pursuant to Federal Rule of Civil Procedure 11—that would state a claim for relief.

If Fann chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings.  The amended complaint should set forth his Eighth and First Amendment claims in short, concise, and plain statements, and in sequentially numbered paragraphs.  Fann must leave one-inch margins on all four sides of his pleading.[80]  He must name proper defendants and *specify* the offending actions or omissions by each defendant.  This step is particularly critical for Fann, as his initial complaint is largely devoid of allegations that demonstrate Defendants' personal involvement in the purported constitutional violations.  Fann may not include claims that have been dismissed with prejudice, and he must also sign the amended complaint and indicate the nature of the relief sought.

Finally, Fann may not combine unrelated claims against different defendants in violation of Federal Rule of Civil Procedure 20(a)(2).  For example, it appears that Fann's retaliation claim (stemming from events at SCI Rockview and involving conduct by SCI Rockview officials) concerns different Defendants than his Eighth Amendment conditions-of-confinement claim regarding prison

---

[80]   *See* LOCAL RULE OF COURT 5.1

conditions at SCI Fayette. Unless this Eighth Amendment claim is part of the "same transaction, occurrence, or series of transactions or occurrences" underlying his retaliation claim, or there is a "question of law or fact common to all defendants," these unrelated claims against presumably different defendants cannot be permissively joined together in a single action.

If Fann does not timely file an amended complaint, dismissal of his Section 1983 claims without prejudice will automatically convert to dismissal with prejudice and the Court will close this case.

## IV. CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion (Doc. 16) to dismiss under Federal Rule of Civil Procedure 12(b)(6). Fann's Fourteenth Amendment deprivation-of-property claim and his official capacity claims will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge