# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GREGORY O. FANN, JR.,

      Plaintiff,

    v.

BOBBY-JO SALAMON, *et al.*,

      Defendants.

No. 4:23-CV-01787

(Chief Judge Brann)

## MEMORANDUM OPINION

### NOVEMBER 21, 2025

Plaintiff Gregory O. Fann, Jr., is currently incarcerated at the State Correctional Institution (SCI) Smithfield, located in Huntingdon, Pennsylvania. He filed the instant *pro se* Section 1983[1] action in late 2023, claiming constitutional violations by mostly high-level prison officials at the Pennsylvania Department of Corrections (DOC).  Fann's claims have been winnowed to a First Amendment retaliation claim against two officials at SCI Rockview.  Presently pending is those officials' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Because Fann fails to carry his Rule 56 burden, the Court will grant Defendants' motion for summary judgment.

---

[1]   42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

## I.    FACTUAL BACKGROUND[2]

The events that underlie Fann's lawsuit primarily occurred while he was

incarcerated at SCI Rockview.  As relevant to the remaining claims in this case, on

March 21, 2022, Fann filed formal grievance number 972434.[3]  That grievance is

dated March 18, 2022, and time-stamped as received by prison officials on March

21, 2022.[4]  In this grievance, Fann asserted that "2nd shift guards" were engaging in

"lewd and inappropriate behavior in the hub," a guard allegedly hit an inmate on

C-Block, birds were "pooping everywhere and flying into cells," there was a mice

---

[2]    Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.*  "Statements of material facts in support of, or in opposition to, a motion [for summary judgment] shall include references to the parts of the record that support the statements." *Id.*  Defendants filed a properly supported statement of material facts. *See* Doc. 48.  Fann eventually filed a counterstatement of facts, *see* Doc. 56 at 1-4, but it is not responsive to Defendants' statement of material facts and instead sets out his own version of events.  Additionally, most of Fann's statements of fact are not supported by citations to the record and instead contain only argument or allegations. *See id.* at 1-4 ¶¶ 1-4, 6-10, 13, 16-17 (paragraphs 15, 16, and 17 on page 4 of Fann's statement of facts are mislabeled as duplicate paragraphs "13," "14," and "15").  Fann's lack of citation to record evidence directly contravenes Local Rule 56.1. *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (explaining that Local Rule 56.1 "is essential to the Court's resolution of a summary judgment motion due to its role in organizing the evidence, identifying undisputed facts*, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence*." (emphasis added) (internal quotation marks and citations omitted)).  His failure to respond to Defendants' statement of material facts and instead setting out his own version of events is likewise procedurally inappropriate. *See Barber v. Subway*, 131 F. Supp. 3d 321, 322 n.1 (M.D. Pa. 2015) (explaining that separate, nonresponsive statement of facts by nonmovant is "neither contemplated nor permitted by the Local Rules").  Defendants' material facts, therefore, are deemed admitted unless (1) properly rebutted by Fann's counterstatements containing appropriate record citations, or (2) plainly contradicted by the record. *See* LOCAL RULE OF COURT 56.1.

[3]    Doc. 48 ¶ 7.

[4]    *See* Doc. 48-2 at 5.

infestation, the "vents" did not work, the ceiling leaked, prisoners were not provided with mops or brooms to clean their cells, and the prisoners' food was "either half cooked or cold."[5]  This grievance was immediately rejected on procedural grounds by Facility Grievance Coordinator K. Brubaker for presenting "multiple issues" in a single grievance that should have been "presented separately."[6]

Fann appealed the rejection (rather than refiling separate grievances), asserting that the gist of grievance 972434 was that the inmates were "living in unsanitary and unsafe conditions" and that his grievance attempted to catalogue those unsafe and unsanitary conditions.[7]  On April 8, 2022, the Facility Manager, Superintendent Bobbi Jo Salamon, upheld the initial rejection, noting that Fann had attempted to raise multiple issues in a single grievance in violation of DC-ADM 804 and had also failed to provide required information for his claim(s).[8]  It is unclear whether Fann appealed this grievance rejection further, although he maintains that he appealed to final review with "SOIGA in Central Office" but did not receive a response.[9]

---

[5]    *Id.*
[6]    *Id.* at 4.
[7]    *Id.* at 3.
[8]    *Id.* at 2.  Fann misspells the superintendent's name as "Bobby-Jo" Salamon.  *See* Doc. 48-3.
[9]    *See* Doc. 56 at 3 ¶ 13; Doc. 56-10 at 5.  Whether Fann appealed grievance 972434 to final review is immaterial for the instant Rule 56 motion.

On or around April 25, 2022, inmates at SCI Rockview staged an unauthorized protest.[10]  According to prison documents from the time of the event, the inmates were protesting the prison taking away "night blockout."[11]  The Pennsylvania Department of Corrections (DOC) Bureau of Investigations and Intelligence (BII) reported that part of the inmate's protest plan involved taking Superintendent Salamon and other SCI Rockview administrative officials hostage.[12]  During the investigation, BII agents interviewed inmates involved in the protest,[13] and a confidential informant identified Fann as being a participant in the hostage plot.[14]

Fann avers that, on April 26, 2022, he was escorted to the prison's "school building" and interviewed by a BII agent.[15]  Fann attests that he informed the agent that he had no role or participation in the protest.[16]  He further attests that during the interview, he told the agent about the sexual misconduct taking place on D-Block by certain corrections officers.[17]

Two days later, on April 28, 2022, Fann was transferred to SCI Fayette and placed in the Restricted Housing Unit (RHU) in administrative custody.[18]  The

---

[10]  Doc. 48-3 ¶ 3.
[11]  *See* Doc. 48-4 at 11.
[12]  Doc. 48 ¶ 13; Doc. 48-3 ¶ 5.
[13]  Doc. 48 ¶ 12.
[14]  *Id.* ¶ 13; Doc. 48-4 at 12, 13.
[15]  Doc. 56-10 at 2 ¶ 17.
[16]  *Id.*
[17]  *Id.*
[18]  Doc. 48 ¶ 14; Doc. 56-5 at 2.

DOC paperwork for the transfer indicates that Fann "was identified as a threat to staff at SCI-Rockview and to the security of the facility," and recommended that Fann be granted "an Administrative Separation" from Superintendent Salamon, several inmates, Deputy S. Woodring, and SCI-Rockview.[19]

On May 4, 2022, Fann was issued misconduct D539215, charging him with "threatening an employee or their family with bodily harm" and "engaging or encouraging unauthorized group activity."[20]  The misconduct was issued by Captain D. R. Davis and stated that Fann had been identified on April 26, 2022, by the BII as being involved in the plot to take SCI Rockview officials hostage during "an unauthorized inmate protest on April 25, 2022."[21]

Fann, for his part, adamantly denied that he had played any role in the protest or the plot to take prison officials hostage.  He attempted to refute the charges asserted in the misconduct, pointing out that he had alibis for his whereabouts on April 25 (the day of the protest), and that he was housed on D-block, not A-block—where the protest had occurred.[22]

On May 18, 2022, a disciplinary hearing examiner determined that Fann had committed both charged offenses.[23]  The hearing examiner relied primarily on a

---

[19]  Doc. 48-5.
[20]  Doc. 48 ¶ 15; Doc. 48-4 at 13.
[21]  Doc. 48-4 at 13.
[22]  *Id.* at 14.
[23]  *Id.* at 11-12.

May 13 in-camera interview with BII Major Torres as to the reliability of a

"Confidential Human Source" (CHS) and the content of that source's report.[24]

According to Major Torres, the CHS—who had "first[-]hand knowledge of the

incident"—identified Fann as one of the inmates involved with planning the protest

and hostage incident and who was "going to be involved in taking hostages and

protesting on D Block had the incident [gone] according to plan."[25]  Fann was

sentenced to an aggregate punishment of 120 days' disciplinary custody.[26]

Additionally, on June 27, 2022, Fann was moved to the "Security Threat

Group Management Unit" (STGMU).[27]  According to the DOC's contemporaneous

SGTMU vote sheet, Fann is serving a life sentence for first-degree murder and

robbery, had 11 misconducts during his incarceration, is a "validated member of

the STG Crips-Eight Trey Ganster Crips," and was identified as a threat to staff at

SCI Rockview and to the security of the facility.[28]  Thus, he was recommended to

be moved to the STGMU.[29]

Fann filed the instant Section 1983 lawsuit in October 2023.  His initial

complaint was dismissed in its entirety,[30] and his amended complaint was

---

[24]   *See id.* at 11, 12.
[25]   *See id.* at 11.
[26]   *Id.* at 12.
[27]   Doc. 48 ¶ 16.
[28]   Doc. 48-6 at 2.
[29]   *Id.*
[30]   *See generally* Docs. 21, 22.

dismissed in part.[31]  The only remaining claims in this case are Fann's First

Amendment retaliation claims against Superintendent Salamon and Captain

Davis.[32]  Specifically, Fann alleges that Superintendent Salamon retaliated against

him for reporting sexual misconduct of SCI Rockview corrections officers via

grievance and to a BII investigator by transferring him to SCI Fayette and by

having him moved to the STGMU.[33]  He alleges that Captain Davis retaliated

against him for the same protected speech by filing misconduct D539215, which

Fann maintains was fabricated.[34]

Defendants now move for summary judgment on the remaining retaliation

claims.[35]  Their Rule 56 motion is fully briefed and ripe for disposition.

## II.    STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate

and dispose of factually unsupported claims or defenses."[36]  Summary judgment is

appropriate where "the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."[37]  Material

facts are those "that could alter the outcome" of the litigation, and "disputes are

---

[31]    *See generally* Docs. 34, 35.
[32]    *See* Doc. 34 at 16-17.
[33]    *See* Doc. 26 ¶¶ 35, 41, 43, 46, 47.
[34]    *See id.* ¶¶ 36, 41, 44, 45.
[35]    Doc. 47.
[36]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[37]    FED. R. CIV. P. 56(a).

'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[38]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[39]  The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[40]  This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[41]  A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]."[42]  Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[43]

## III.  DISCUSSION

Defendants contend that Fann's retaliation claims fall short for multiple reasons.  They argue that Fann failed to exhaust administrative remedies, that his

---

[38] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[39] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[40] *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

[41] *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).

[42] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).

[43] *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

retaliation claims fail on the merits, and that liability is precluded by qualified

immunity.  The Court need only address Defendants' first two arguments, as they

are dispositive to the outcome of this case.

### A.    Administrative Exhaustion

The Prison Litigation Reform Act of 1995 (PLRA)[44] requires prisoners to

exhaust available administrative remedies before suing prison officials for alleged

constitutional violations.[45]  Proper exhaustion is mandatory, even if the inmate is

seeking relief—like monetary damages—that cannot be granted by the

administrative system.[46]  Failure to properly exhaust generally results in the claim

being procedurally defaulted and unreviewable.[47]  The exhaustion process a

prisoner must follow is governed by the contours of the prison grievance system in

effect where the inmate is incarcerated.[48]

Pennsylvania's Department of Corrections (DOC) employs a three-step

grievance process that must be completed to properly exhaust administrative

remedies in most cases.[49]  If informal resolution attempts do not solve the problem,

the first step is to file a written grievance (using form DC-804, Part 1) with the

---

[44]  42 U.S.C. § 1997e *et seq.*
[45]  *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).
[46]  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).
[47]  *See Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004).
[48]  *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.
[49]  *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305-06 & n.4 (3d Cir. 2020); Doc. 48-7, COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").

Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based."[50]  An adverse decision by the grievance coordinator must be appealed to the Facility Manager within 15 working days of the initial-review response or rejection.[51]  Finally, an adverse decision by the Facility Manager must be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals (SOIGA), and again must be submitted within 15 working days of the date of the Facility Manager's decision.[52]

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other conditions, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the inmate "specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court."[53]

Defendants assert that Fann never filed any grievance that raised a claim of retaliation about the purported events, let alone one that named or identified

---

[50]  DC-ADM 804 § 1(A)(3)-(5), (8).
[51]  *Id.* § 2(A)(1).
[52]  *Id.* § 2(B)(1).
[53]  *Id.* § 1(A)(11).

Superintendent Salamon or Captain Davis as being involved in the retaliation. Fann has not responded to Defendants' exhaustion argument at all and therefore has failed to carry his burden at summary judgment. Nonetheless, the Court will examine exhaustion for each retaliation claim.

Fann alleges that Superintendent Salamon retaliated against him by transferring him to SCI Fayette and by moving him to the STGMU. He has not pointed to any grievance (or other administrative filing) where he asserted or even mentioned this alleged retaliation to prison administrators. Generally, however, retaliation claims—like other Section 1983 claims—must be raised and exhausted through the prison's administrative grievance system.[54] Fann never informed prison officials that he believed his transfer to SCI Fayette and his STGMU placement were retaliation for his protected First Amendment conduct,[55] much less that Superintendent Salamon was the perpetrator of this alleged First Amendment infringement.[56] Therefore, he procedurally defaulted his retaliation claim against Superintendent Salamon.[57]

---

[54]   *See Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019) (noting that First Amendment retaliation "is a separate claim . . . and therefore must be separately grieved" (citation omitted)); *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003) ("[Section] 1997e(a) requires a prisoner to exhaust his administrative remedies when alleging 'particular episodes' of misconduct—which would include an act of retaliation.");

[55]   *See* DC-ADM 804 § 1(A)(11)(a), (c); *see also Mack v. Warden Loretto FCI*, 839 F.3d 286, 295 (3d Cir. 2016) (explaining that when a policy is "silent or vague" regarding the level of detail required in a grievance, an inmate must at least "alert[ ] the prison to the nature of the wrong for which redress is sought.")

[56]   *See* DC-ADM 804 § 1(A)(11)(b).

[57]   *See Spruill*, 372 F.3d at 230.

The same conclusion cannot be reached as to Fann's retaliation claim against Captain Davis. The law in this circuit is unsettled when it comes to retaliation claims based on allegedly fabricated misconducts issued by state prison officials.[58] This is primarily because under DC-ADM 804, prison officials will often reject grievances that challenge or even mention misconducts and will instead direct prisoners to operate through DOC policy DC-ADM 801 to challenge any misconduct-related issue.[59] That is, in fact, what occurred in this case.[60]

An appeal through DC-ADM 801, however, is expressly limited by the relevant DOC forms to claiming that (1) "the procedures employed were contrary to law, Department directives, or regulations"; (2) "the punishment is disproportionate to the offense"; or (3) "the findings of fact were insufficient to support the decision."[61] It is unclear whether an inmate could successfully assert that a misconduct was fabricated as retaliation for protected First Amendment conduct under any of these three specific appeal categories.

In grievance number 981200—the only relevant grievance referenced—Fann challenged the misconduct he had received, claiming that the charges were false and unsubstantiated.[62] Although he did not specifically name Captain Davis in his

---

[58]   *See Grisby v. McBeth*, 810 F. App'x 136, 138 n.1 (3d Cir. 2020) (nonprecedential) (noting that there is a "serious question" whether administrative remedies are available to exhaust prisoner retaliation claims based on adverse action of misconduct charge).
[59]   *See id.* at 139; DC-ADM § 804 § 1(A)(7).
[60]   *See* Doc. 48-9 at 2 (rejecting grievance 981200 and directing Fann to "DC-ADM 801").
[61]   *See* Doc. 48-4 at 10.
[62]   *See* Doc. 48 ¶¶ 29-30; Doc. 48-9 at 3.

grievance, it would be clear to prison officials that Captain Davis authored the at-issue misconduct.  The record further reflects that Fann pursued the DC-ADM 801 appeal process through final appeal.[63]  Accordingly, while the Court finds that Fann clearly failed to administratively exhaust his First Amendment retaliation claim against Superintendent Salamon, it cannot similarly conclude as a matter of law that Fann failed to exhaust his retaliation claim against Captain Davis.[64]

### B.   Merits of First Amendment Retaliation Claim

Defendants next challenge the merits of Fann's retaliation claims.  They argue that Fann cannot establish causation for his claims and additionally raise the "same decision" defense.  Because Fann's retaliation claim against Superintendent Salamon is procedurally defaulted and no longer at issue, the Court will focus on the remaining retaliation claim against Captain Davis.

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the

---

[63]   *See* Doc. 48-4 at 4-10.

[64]   There is a nonfrivolous argument that because neither grievance 981200 nor Fann's DC-ADM 801 appeal documents assert or even imply that Captain Davis issued the misconduct in retaliation for Fann's protected First Amendment conduct, Fann has not exhausted his retaliation claim against Captain Davis. *See Cooper v. Garman*, No. 1:19-cv-02227, 2024 WL 100246, at *12, *14 (M.D. Pa. Jan. 9, 2024).  Nevertheless, the Court will examine the merits of this claim due to the open question of exhaustion for misconduct-based retaliation claims and the fact that neither party has addressed this specific issue in their briefing.

corrections system."[65]  To establish a First Amendment retaliation claim, a plaintiff

must show that (1) "he was engaged in constitutionally protected conduct," (2) he

suffered an "adverse action" by prison officials sufficient to deter a person of

ordinary firmness from exercising his First Amendment rights, and (3) the

plaintiff's protected conduct was a "substantial or motivating factor" in the prison

officials' decision to take the adverse action.[66]

There are a variety of ways to establish causation for a retaliation claim.

One method is to show "unusually suggestive" timing between the protected

conduct and the adverse action.[67]  When a plaintiff relies solely on circumstantial

evidence of temporal proximity, the time between the protected conduct and the

adverse action is often measured in days rather than weeks or months.[68]  However,

there is no "bright line rule limiting the length of time that may pass between a

plaintiff's protected [conduct] and an actionable retaliatory act by a defendant."[69]

Another approach is to demonstrate "a pattern of antagonism coupled with

timing."[70]  Finally, causation can be inferred "from the evidence gleaned from the

---

[65]  *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

[66]  *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

[67]  *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[68]  *See Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018).

[69]  *Id.*

[70]  *DeFlaminis*, 480 F.3d at 267.

record as a whole."[71]  Logically, a plaintiff asserting retaliation "will have to show

. . . that the decision maker had knowledge of the protected activity[.]"[72]

If a prisoner-plaintiff can establish a *prima facie* retaliation case, the burden

shifts to the defendant or defendants to show that "they would have made the same

decision absent the protected conduct for reasons reasonably related to a legitimate

penological interest."[73]  This is often referred to as the "same decision defense."[74]

Defendants' first argument with respect to causation is that Fann cannot

proffer any evidence that Captain Davis had knowledge of Fann's protected First

Amendment activity.  The Court agrees and thus does not reach Defendants'

second causation-related argument or their same decision defense.

As noted above, Fann asserts that the protected conduct at issue was his

March 2022 grievance (where he complained of inappropriate, "lewd" conduct by

corrections officers on D-Block), as well as reporting those officers' sexual

misconduct to a BII agent during the April 26, 2022 interview.  Yet Fann has not

proffered *any* evidence that Captain Davis was aware of this protected speech.

Fann appears to focus entirely on Superintendent Salamon's knowledge of

his protected conduct, attesting that he sent her DC-135A requests to staff about

---

71   *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

72   *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).

73   *Watson*, 834 F.3d at 422 (quoting *Rauser*, 241 F.3d at 334).

74   *Id.*

the officers' sexual misconduct, that she personally reviewed his March 2022

grievance during the appeal process, and that she was directly involved in the

investigation of the April 2022 protest.[75]  But nowhere does Fann demonstrate that

Captain Davis knew of the protected activity such that it would motivate him to

retaliate against Fann by issuing him a fabricated misconduct.[76]

This absence of evidence is fatal to Fann's *prima facie* retaliation claim.

This is so because even if Fann is attempting to rely on the temporal proximity of

his protected activity (reporting the officers' sexual misconduct to a BII agent on

April 26) and the adverse action (being issued a misconduct eight days later on

May 4) to establish causation, "he will have to show *as well* that the decision

maker had knowledge of the protected activity."[77]  Fann has not done so, and "[i]t

is not reasonable for a factfinder to infer that [a defendant decision maker]'s

reaction was motivated by an intent to retaliate for conduct of which the . . .

decision maker was not aware."[78]  On this issue, Fann "bears the burden of proof,

---

[75]  *See* Doc. 56 ¶¶ 9, 11, 12, 14; Doc. 56-10 at 1 ¶ 7; *id.* at 2 ¶¶ 10, 12, 13; *id.* at 5.
[76]  *See* Doc. 48 ¶ 20 (undisputed statement of fact that "Fann cannot produce competent admissible evidence Davis was aware of any protected speech Fann engaged in").
[77]  *See Moore*, 461 F.3d at 351 (emphasis added) (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989)); *Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) ("It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmaker[] must be aware of the protected conduct."); *id.* at 494 (explaining that temporal proximity is "largely irrelevant" if plaintiff has not shown that decisionmaker "was aware of the protected conduct in the first place"); *Walsh v. Wal Mart Stores, Inc.*, 200 F. App'x 134, 137 (3d Cir. 2006) (nonprecedential) ("Absent evidence that the decision-maker had knowledge of the protected activity, 'a substantial gap [exists] in any causal chain suggested [even] by temporal proximity.'" (alterations in original) (quoting *McGorrian v. E.M.S.A.*, 85 F. App'x 1, 4 (3d Cir. 2003) (nonprecedential))).
[78]  *Moore*, 461 F.3d at 351.

16

but fails to sustain it."[79]  Accordingly, the Court must grant judgment in Captain

Davis's favor on the remaining retaliation claim.

## IV.  CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion for

summary judgment pursuant to Federal Rule of Civil Procedure 56.  An

appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[79]  *Ambrose*, 303 F.3d at 493.